UNITED STATES v. WERNER et al.

(District Court, E. D. Pennsylvania. January 15, 1918.)

No. 89.

1. TREASON ⊜1—ELEMENTS OF OFFENSE.

Under Const. art. 3, § 3, providing that treason against the United States shall consist only in levying war against them or in adhering to their enemies giving them aid and comfort, and that no person shall be convicted of treason unless on the testimony of two witnesses to the

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

same overt act or on confession in open court, "treason" embraces the existence both of a state of mind and the commission of overt acts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Treason.]

2. TREASON ⊕⇒12—INDICTMENT—SUFFICIENCY.

Where an indictment for treason charged defendants with adhering to a nation at war with the United States and giving it aid and comfort, not by levying actual war upon the United States, but by other overt acts equally criminal and traitorous, and while it was claimed that it charged only the entertaining, because of expressing, treasonable sentiments, it could be so read only by ignoring or restricting the meaning of some of the legal verbiage employed, it could not be assumed on demurrer that the indictment meant less than it charged, and it was sufficient.

3. INDICTMENT AND INFORMATION ⊕⇒147—DEMURRER—GROUNDS.

Under the approved practice in the courts of the United States, questions which can as well and better be raised at the trial should not be raised by demurrer, especially in view of Rev. St. § 1025 (Comp. St. 1916, § 1691), requiring all defects in pleadings except such as tend to the prejudice of the defendant to be ignored.

Louis Werner and another were indicted for treason. On demurrer to the indictment. Demurrer overruled.

Ernest Harvey, Asst. U. S. Atty., Francis Fisher Kane, U. S. Atty., and Samuel Rosenbaum, Sp. Asst. U. S. Atty., all of Philadelphia, Pa. Wm. A. Gray, of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. The substantial question raised by the demurrer is whether the treason indictment charges a crime in the sense of an offense against the law. This is in turn determined by an inquiry into what constitutes treason. Except to the extent to which the ample store of learning on the subject of treason enables us to better understand "treason" as defined in the Constitution of the United States, this learning does not concern us. The statutory definition follows, as it must, the constitutional definition. We may therefore confine our attention to the latter. It is found in article 3, § 3, and is:

"Treason against the United States shall consist only in levying war against them, or in adhering to their enemies, giving them aid and comfort. No person shall be convicted of treason unless on the testimony of two witnesses to the same overt act, or on confession in open court."

[1] In addition to obviously necessary elements, treason, as thus defined, embraces the existence both of a state of mind and the commission of overt acts, and prescribes how the latter shall be proven. The latter requirement demands a trial ruling and is not a demurrer question or in any proper sense a question of pleadings. Treason, as we are now concerned with it, assumes, as the proper attitude of all who are subject to this law, that of being well disposed toward the United States and of being its well wisher, and brands as traitor one who adheres to its enemies and who also levies war upon the United States, or who, in adhering to its enemies, gives those enemies aid and comfort. It is conceivable that a defendant may have this condemned attitude of mind or be what is termed "traitor at heart," and yet not expose him-

self to the charge of legal treason because he has committed no traitorous act. It is also conceivable that one under the domination of folly or of factional feeling or directed by a perverted view of what he is doing, or even a wrong-headed conscience, may do what would otherwise be traitorous acts, and yet not expose himself to that charge because the acts, although carrying all the consequences of traitorous acts, were done without traitorous purpose or intent. Such a man plays the part of a traitor, but is not a traitor at heart.

[2] This indictment, in appropriate words, avers the presence of both these elements in what the defendants are charged with doing. It avers their attitude to be the opposite of that of those who are well disposed toward the United States, and charges the defendants with adhering to a nation against which this nation is waging a just war, giving this enemy nation aid and comfort, not, it is true, by the bold act of levying actual war upon the United States, but by other overt acts equally criminal and just as traitorous. Words may be acts, and acts words. Emphasis is given to the expression of the latter thought in the oft-quoted phrase that "acts sometimes speak louder than words." Words, on the one hand, may be "mere sound and fury signifying nothing," or, on the other hand, they may be fraught with the most frightful significance, and be acts followed by the most dreadful consequences.

The question which has been sought to be raised by this demurrer is one which can only be raised, or at least is more properly raised, as a trial question. Counsel for defendants reads this indictment in such way as to give plausibility to the argument that the question the defendants seek to raise may be raised as a demurrer question. The reading is that the overt act charged is the publication of a newspaper. Even if the indictment be read as charging as the overt act the publication of a newspaper containing certain utterances, it nevertheless means only giving expression to the quoted sentiments, and, however disloyal and traitorous the sentiments may be, the utterance of them does not constitute the crime of treason. This, it is asserted, is the offense charged, and if it is not treason the court may so pronounce upon demurrer.

To put the thought in another way, it is confidently asserted that mere words, no matter how vilely disloyal nor how clearly they evidence "the black heart of a traitor," if accompanied by no other overt act than their utterance or publication, cannot be made the basis of a charge of treason. Such seditious utterances are misdemeanors at common law, and, of course, properly made statutory offenses; but the point made is they are not treason. For this, the expression of the opinion of Judge Nelson in his Charge to a Grand Jury, as reported in 5 Blatchf. 550, Fed. Cas. No. 18,271, is quoted as authority. The quotation is:

"Words oral, written or printed, however treasonable, seditious or criminal of themselves, do not constitute an overt act of treason, within the definition of the crime."

We do not feel called upon at this time to announce in advance of trial what a proper trial ruling upon the suggested question would be.

This can be made only after the evidence is in, and the whole scope and effect of the overt acts, which are charged in the indictment to be treasonable in intent, purpose, and effect, is known. Judgment can then be pronounced whether treason has been proven, if the facts as disclosed are found by the jury against the defendants. It is, of course, clear that if the law of treason be as thus stated, and (for the purpose of presenting the point upon which this demurrer is ruled) we will assume it is, and if, at the close of the case, the United States has proven against the defendants only the utterance of treasonable sentiments, the law of the case must be so pronounced. To so pronounce it now is to find, not only the law to be as stated, but to find also the charge to involve nothing more than the mere utterances quoted. The evidence might disclose more than this and enough more to justify a finding of the guilt of treason.

The opinion expressed by Judge Nelson will bear the construction that although words, so long as they are mere words, "do not constitute an act of overt treason," yet, when "printed in relation to an act or acts which if committed with a treasonable design might constitute such overt act," they may be part of the treasonable act, in addition to being evidence of treasonable intent. Letters written, or oral messages sent, to convey information of value to an enemy, could not be deemed otherwise than as treasonable, whether the former were sent by post or telegraph, and the latter by a messenger or a shout. If sent by the wireless operation of a publication which would make the facts known through making them notorious, the essential character of the act would be in no wise changed. The ingenuity of the criminal cannot be permitted to hide the criminality of his act.

The form of this indictment lays it open to the criticism that it voices only the charge of entertaining because of expressing treasonable sentiments. It can be so read, however, only by ignoring or restricting the meaning of some of the legal verbiage employed. It in apt and appropriate words charges the offense of treason, and we have no warrant to assume that it means less than what it charges.

[3] If the wish is to secure a ruling upon the question argued, the record should be put in such shape as to present that question only. The approved practice in the courts of the United States is to discourage the raising of mere procedure questions by demurrers to indictments by reason of formal defects or otherwise. This discouragement extends to raising by demurrer questions which can as well or better be raised as trial questions. R. S. 1025 is a command to ignore all defects in pleadings except such as "tend to the prejudice of the defendant."

It is the right of the people, as well as the defendants, that there shall be open public inquiries into every charge of crime, and that the guilt of the defendant shall be submitted to a jury as the lawfully constituted tribunal to pass upon it. This, of course, does not lessen the responsibility of prosecuting officers and grand juries to see to it that no defendant shall be unjustly harassed by unfounded charges, nor does it relieve the trial judge of the duty of unflinchingly pronouncing judgment that the evidence is insufficient to convict, if such be the

case, and of seeing to it that no man be unjustly convicted, if entitled to an acquittal under the facts or the law. It does mean, however, that when officials charged with that responsibility have submitted an indictment, and a grand jury has found a true bill, the court shall not usurp the functions of the trial jury, and shall not dismiss the indictment unless it charges no offense against the law, or discharge the defendants unless the evidence will not warrant a conviction. The former we cannot find, because this indictment is admittedly good as an indictment, unless limitations are read into it which we do not feel justified in inserting, and the latter cannot be known until the evidence is in. What the law is, in case the indictment were read as counsel for the defendants reads it, is a speculation upon which we do not care to enter, unless the United States concurs in this reading.

The demurrer is overruled, and judgment of respondeat ouster is entered as required by R. S. 1026 (Comp. St. 1916, § 1692).